**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-12282
Non-Argument Calendar
_____

DAWN PLAGIANES,

*Plaintiff-Appellant,*

*versus*

FULTON COUNTY SCHOOL DISTRICT,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cv-03775-JPB
_____

Before NEWSOM, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Dawn Plagianes appeals the dismissal of her complaint alleging claims of employment discrimination against her former em-

ployer, Fulton County School District ("FCSD"). On appeal, Plagianes only challenges the district court's dismissal of her claims brought under Title I of the Americans with Disabilities Act ("ADA") for failure to timely exhaust her administrative remedies. After review,[1] we affirm the district court's dismissal of Plagianes's ADA claims.

## I. BACKGROUND

Plagianes filed a complaint[2] against FCSD asserting claims under the ADA and the Family and Medical Leave Act ("FMLA") based on her termination from FCSD. In March 2021, Plagianes, a teacher who was on leave without pay, informed an FCSD employee that she would return to work once she received the second dose of the COVID-19 vaccine in April 2021. But, in April 2021, FCSD's legal counsel contacted Plagianes and informed her that FCSD "was no longer going to allow her to return to work as scheduled." Instead, Plagianes had the option to either (1) resign, (2) medically resign, or (3) be terminated. When asked why she faced termination even though she did not have any disciplinary issues, FCSD's legal counsel responded that "this was the decision

---

[1] We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *Beazer v. Richmond Cnty. Constructors, LLC*, 169 F.4th 1082, 1086 (11th Cir. 2026).

[2] We recount the relevant facts outlined in Plagianes's complaint, accepting all allegations as true and construing them in the light most favorable to Plagianes. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

made by" FCSD. Plagianes stated that she was "constructively discharged from her position via forced resignation effective July 31, 2021." Plagianes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 5, 2022.

FCSD moved to dismiss Plagianes's complaint for failure to state a claim. FCSD argued, among other things, that Plagianes failed to properly exhaust her administrative remedies as to her ADA claims because her EEOC charge was untimely. FCSD contended that the EEOC charge was untimely because Plagianes did not file it within 180 days of when FCSD informed her of its decision to terminate her in April 2021.

Plagianes opposed FCSD's motion to dismiss and moved for leave to file an amended complaint, arguing that her ADA claims were not time barred. In her proposed amended complaint, Plagianes included additional details about her "forced resignation." Specifically, she alleged that after FCSD's legal counsel told her that she could either resign, medically resign, or be terminated, Plagianes chose to medically resign and sent FCSD's legal counsel a letter reflecting that decision on April 12, 2021. Plagianes explained that she "did not know whether a medical resignation would ultimately end her employment" or if her resignation would be revoked when she received her second COVID-19 vaccine dose. Plagianes then stated that she was "constructively discharged . . . via forced resignation effective August 1, 2021."

A magistrate judge recommended that Plagianes's ADA claims be dismissed because Plagianes failed to timely file her EEOC charge.  The district court adopted the magistrate judge's recommendation over Plagianes's objection.

Plagianes timely appealed the district court's dismissal order.

## II.  DISCUSSION

Plagianes argues on appeal that (1) she timely filed her EEOC charge of discrimination when measured from the date that her resignation became effective in July/August 2021, and (2) even if she did not timely file her EEOC charge, she is entitled to equitable tolling.  For the reasons below, we disagree with both arguments.

"An employee making a discrimination claim under the ADA must first exhaust her administrative remedies by filing a Charge of Discrimination with the EEOC."  *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018).  In a "non-deferral state" like Georgia, an ADA plaintiff must file her EEOC charge within 180 days of the allegedly discriminatory action she seeks to challenge.  *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).

When, as in this case, the allegedly discriminatory action is a termination, the 180-day filing period begins to run from the "final decision to terminate the employee" because it is the final termination decision "rather than actual termination" that constitutes

the discriminatory action. *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1201 (11th Cir. 2003) (quoting *Cocke v. Merrill Lynch & Co., Inc.*, 817 F.2d 1559, 1561 (11th Cir. 1987)). "Thus, the 180-day period is counted from the date the employee receives *notice* of termination," as long as the notice was "unequivocal." *Id.* at 1201-02 (quoting *Cocke*, 817 F.2d at 1561). The employee's "subjective belief" is irrelevant. *Id.* at 1203.

The Supreme Court has explained that termination is a "discrete" act that starts the 180-day time limit, and a plaintiff may not sue based on discrete discriminatory acts that occurred more than 180 days prior to the filing of the EEOC charge. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002).

For example, in *Delaware State College v. Ricks*, in reviewing a former college professor's employment-discrimination claim based on his termination, the Supreme Court held that the EEOC filing time period started to run on the date the plaintiff was denied tenure, not the subsequent date on which his contract expired. 449 U.S. 250, 257-58 (1980). That is because the denial of tenure was the triggering discriminatory act, while the expiration of the contract was merely an inevitable consequence of that act. *Id.* The Court explained, "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful," and "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* (quoting *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979)).

In this case, FCSD communicated its decision to terminate Plagianes to her in April 2021 when it informed her that she could either resign, medically resign, or be fired.  FCSD's notice of termination was unequivocal because it clearly communicated to Plagianes that she was losing her job in any circumstance and thus started the 180-day time period to file the EEOC charge. *See Wright*, 320 F.3d at 1201-02; *Morgan*, 536 U.S. at 110-15.  It does not matter that the termination subsequently went into effect in July/August 2021, because that was merely an inevitable consequence of FCSD's termination decision rather than an independent discriminatory act.  *See Ricks*, 449 U.S. at 256-58.  Thus, because Plagianes filed her EEOC charge on January 5, 2022, more than 180 days after April 2021, she failed to timely exhaust her administrative remedies with respect to her termination as required.  *See Batson*, 897 F.3d at 1327; *Maynard*, 256 F.3d at 1262; *Wilkerson*, 270 F.3d at 1317.

Plagianes argues that her EEOC charge was timely filed under the continuing-violation doctrine because she asserted a constructive-discharge claim.  However, even if Plagianes's termination claim is based on a constructive-discharge theory, her EEOC charge was nevertheless untimely.

"The continuing violation doctrine allows the plaintiff to sue on otherwise time-barred claims if the defendant's actions violate a plaintiff's rights on a repeated or ongoing basis," such that those actions constitute "a single violation of an ongoing nature."

*Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 992 (11th Cir. 2025) (quotation marks omitted). The doctrine provides that, "[f]or claims based on the *cumulative* effect of individual acts, (that is, hostile work environment or constructive discharge claims), the limitations period runs from date of the last act composing the claim." *Id.* at 993 (quotation marks omitted). Thus, for a cumulative claim, if the plaintiff files her EEOC charge within 180 days "of the last act composing the claim," then the plaintiff has timely exhausted her administrative remedies as to all discriminatory acts that contributed to the claim even if those acts were committed more than 180 days prior to the filing of the EEOC charge. *Id.* at 992-93. On the other hand, "[t]he continuing violation doctrine cannot convert 'related discrete acts into a single unlawful practice for the purposes of timely filing.'" *Id.* at 992 (quoting *Morgan*, 536 U.S. at 111).

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). If the employee resigns under such circumstances, the resignation is treated "as tantamount to an actual discharge." *Id.*

The Supreme Court has explained that the statute of limitations for a constructive-discharge claim begins to run once the employee actually resigns. *Id.* at 554-56. The Court clarified that, just like how under *Ricks* a wrongful-discharge claim accrues when the

employer notifies the employee that she is fired, not on the last day of her employment, "a constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of [her] resignation, not on the effective date of that resignation." *Id.* at 564.

Under this law, even if Plagianes asserted a constructive-discharge claim, she nevertheless failed to timely file her EEOC charge. When offered the decision of whether to resign, medically resign, or be terminated, Plagianes chose to medically resign and officially communicated her decision to FCSD on April 12, 2021. And Plagianes did not allege that FCSD committed any purportedly discriminatory acts after that date that might have contributed to her constructive-discharge claim. Therefore, the 180-day deadline for Plagianes's constructive-discharge claim started to run on April 12, 2021. *See id.* at 554-56, 564. It is irrelevant that Plagianes's resignation only became effective in July/August 2021 because it is the date that the employee gives notice of resignation that starts the 180-day time limit, not the effective date of the resignation. *See id.* at 564; *Ricks*, 449 U.S. at 257-58. Because Plagianes filed her EEOC charge more than 180 days after April 12, 2021, Plagianes failed to timely exhaust her administrative remedies with respect to her constructive-discharge claim even under the continuing-violation doctrine. *See Jimenez*, 146 F.4th at 992-93.

As a last resort, Plagianes argues that she is entitled to equitable tolling as to the 180-day deadline. Specifically, she asserts that

FCSD misled her into allowing the 180-day deadline to lapse because FCSD's April 2021 statement to her that she could either resign, medically resign, or be terminated suggested that she might remain employed until an unspecified later date or that her resignation might be revoked.

Plagianes did not raise this issue before the district court, so she has forfeited it on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). However, even if Plagianes properly preserved this issue for appeal, we would still affirm the district court because Plagianes failed to establish that she is entitled to equitable tolling. *See Carter v. W. Publ'g Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000) ("A plaintiff who asserts the applicability of equitable tolling bears the burden of proving that it is appropriate.").

The 180-day time limit for filing an EEOC charge is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "Equitable tolling is an extraordinary remedy which should be extended only sparingly." *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) (quotation marks omitted). "[T]raditional equitable tolling principles require that [a plaintiff seeking equitable tolling] demonstrate *extraordinary circumstances*, such as fraud, misinformation, or deliberate concealment." *Jackson v. Astrue*, 506 F.3d 1349, 1355 (11th Cir. 2007). One example of a qualifying extraordinary circumstance is "when the defendant misleads [the plaintiff] into allowing the statutory period to lapse." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993).

Plagianes failed to establish that she is entitled to equitable tolling because she specifically alleged facts showing that FCSD did not mislead her into allowing the 180-day time period to lapse. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (*en banc*) ("A plaintiff [seeking equitable tolling] . . . can plead [her]self out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances."). Plagianes alleged that FCSD's representative told her in April 2021 that she could either resign, medically resign, or be terminated. A reasonable person could only interpret that message as conveying that she was losing her job in any circumstance.

Without a qualifier, such as that FCSD was searching for another position for Plagianes or that Plagianes could apply for a transfer, FCSD's April 2021 statement could not reasonably have led Plagianes to think that she would be able to keep her job. *See Cocke*, 817 F.2d at 1561 ("[W]hile the employer is actively trying to find a position within the company for the employee, the 180-day filing period . . . is equitably tolled until such time as it is or should be apparent to an employee with a reasonably prudent regard for [her] rights that the employer has ceased to actively pursue such a position."); *Pearson v. Macon-Bibb Cnty. Hosp. Auth.*, 952 F.2d 1274, 1280 (11th Cir. 1992) (holding that equitable tolling would apply for a wrongful-discharge claim when the employee "was invited to seek a transfer as an alternative to termination"). In other words, when FCSD's representative told Plagianes that she could either resign, medically resign, or be terminated, Plagianes "had all the facts [s]he needed" to file an EEOC charge based

25-12282                 Opinion of the Court                 11

on her constructive-discharge claim.  *See Fedance v. Harris*, 1 F.4th 1278, 1289 (11th Cir. 2021).

### III.  CONCLUSION

For the above reasons, Plagianes failed to timely exhaust her administrative remedies as to her termination and is not entitled to equitable tolling.  Thus, the district court did not err by dismissing Plagianes's ADA claims.

**AFFIRMED.**